Maureen Beyers, No. 017134
OSBORN MALEDON, P.A.
2929 North Central Avenue
Phoenix, Arizona 85012-2793
(602) 640-9305
mbeyers@omlaw.com

Andrew J. Ceresney, No. AC2586 *(Admitted Pro Hac Vice)*
Philip A. Fortino, No. PF5996 *(Admitted Pro Hac Vice)*
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York  10022
(212) 909-6000
ajceresney@debevoise.com
pafortino@debevoise.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR DISTRICT OF ARIZONA

| James H. Stark and Ricky P. Stark,<br><br>Plaintiffs,<br><br>v.<br><br>UBS Financial Services, Inc,<br><br>Defendant. | Case No.: 4:12-CV-00422-RCC<br><br>**DEFENDANT'S RESPONSE TO MOTION TO FOR RELIEF FROM JUDGMENT AND ORDER** |
|---|---|

Defendant UBS Financial Services Inc. ("UBS") responds to the Motion for Relief From Judgment and Order (DE 20) ("Motion") of Ricky Peter Stark and James H. Stark (the "Starks") as follows:

### **PRELIMINARY STATEMENT**

In their most recent motion, the Starks continue their attempts to avoid paying undisputed debts to UBS—debts that were due and payable in ***June 2009***. Their excuse this time is that the Court improperly entered judgment on only some

of the claims pending in this matter and that on remand, the arbitration panel may award them damages on a factually distinct, unrelated claim in excess of the substantial sum they owe to UBS, making them a net creditor to UBS.  But the Motion is predicated on a faulty assumption—that there are additional claims to be resolved by this Court.  In fact, the Court has resolved all of the issue before it, and entering judgment was appropriate.  Moreover, the Motion cites no case holding that it is improper to enter a final judgment on a claim where there is the possibility (here, a vanishingly small chance) of an offset.  In fact, the case law is to the contrary: the possibility of an offset is *not* a sufficient basis for withholding judgment in favor of UBS, and the relevant considerations and equities weigh heavily in favor of confirming the Court's November 16, 2012 Judgment and Order confirming the monetary award to UBS (DE 17, 18).

## ARGUMENT

### A.     The Court Has Fully Resolved the Motion and There Are No Additional Claims Pending.

Following the Starks' Motion to Vacate a FINRA arbitration award (DE 1) and UBS' Cross Motion to Confirm that award (DE 11), the Court granted and denied both motions in part (DE 17) and entered judgment (DE 18) on UBS' cross motion confirming the award against the Starks, requiring the Starks to pay UBS $187,490.79 (*id*.).  In response, the Starks filed the Motion, which is based entirely on a faulty premise—that this Court has resolved some of the claims pending before it, but not others.  Based on this faulty premise, the Starks argue that the possibility of further adjudications by this Court militate against entering judgment for UBS. (Mot. at 3.)  In fact, however, the Court decided two motions under the Federal Arbitration Act—the Starks' motion to vacate the arbitration award and UBS' cross-motion to confirm it. (DE 17.)  The Court granted and denied both motions in part. (*Id*.)  By confirming the monetary award to UBS and remanding

to the arbitration panel the portion of the award ordering the return of the Starks' property (*id.*), the Court has fully adjudicated the matters before it. Simply put, there is no "claim" pending before this court that is left unresolved. Accordingly, there is no danger of overlapping appeals from the Court's prior decisions and future decisions with respect to the existing motions. As such, the Starks' argument that the entry of judgment was inappropriate because it left claims unadjudicated must be rejected.[1]

### B. The Possibility of an Offset is Not a Controlling Factor in Determining Whether to Grant a Rule 54(b) Certification.

Even if there was an additional, unresolved claim pending before this Court, entry of judgment would be appropriate, notwithstanding the possibility of a future offsetting judgment. Rule 54(b) of the Federal Rules of Civil Procedure allows courts to direct entry of a final judgment as to one or more, but not all, claims in an action. And, the Supreme Court held that district courts have considerable discretion under Rule 54(b) to determine whether there is any just reason for delay in making final judgments on individual claims immediately appealable. *Curtiss-Wright Corp. v. Gen. Elec.*, 446 U.S. 1, 7-8 (1980). In fact, the Ninth Circuit, in *Texaco, Inc. v. Ponsoldt*, noted "[t]he present trend…toward greater deference to a district court's decision to certify under Rule 54(b)." 939 F.2d 794, 798 (9th Cir. 1991). The *Texaco* court also criticized *Morrison-Knudsen v. Archer*, one of three cases on which the Starks rely, for its "outdated and overly

---

[1] The three cases the Starks cite in their brief are distinguishable from this one because, in each case, unresolved claims remained pending with the court. *See Curtiss-Wright Corp. v. Gen. Elec.*, 446 U.S. 1, 4-5 (1980) (holding that district court did not abuse its discretion in entering judgment on certain claims in a multi-claim action while unrelated claims were litigated), *Frank Briscoe Co., Inc. v. Morrison-Knudsen Co., Inc.*, 776 F.2d 1414, 1416 (9th Cir. 1985) (discussing propriety of a Rule 54(b) determination where several claims remained pending before the court); *Morrison-Knudsen Co., Inc. v. Archer*, 655 F.2d 962, 963-64 (9th Cir. 1981) (same).

3

restrictive" view of Rule 54(b). *Id.* Relevant factors that district courts may consider in making this determination include:

> that [Rule 54(b)] certification would not result in unnecessary appellate review; that the claims finally adjudicated were separate, distinct, and independent of any of the other claims or counterclaims involved; that review of these adjudicated claims would not be mooted by any future developments in the case; and that the nature of the claims was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.

*Curtiss-Wright Corp.*, 446 U.S. at 5-6. Contrary to the implication in the Starks' moving papers, the mere existence of unadjudicated counterclaims and the possibility of a setoff does not make a Rule 54(b) certification inappropriate. (Mot. at 3); *Curtiss-Wright Corp.*, 446 U.S. at 9 (noting that the Court of Appeals' conclusion "that the possibility of a setoff required that the status quo be maintained unless petitioner could show harsh or unusual circumstances … reflects a misinterpretation" of Rule 54(b)).

All of the relevant factors supporting the entry of judgment are present here, and the Starks' moving papers do not suggest otherwise. The judgment entered confirms UBS' award on its claims with regard to the Starks' default under the promissory notes they executed. (DE 18.) Those arbitration claims are factually distinct from and unrelated to the remanded issue relating to the alleged conversion of the Goldmine database. There also are no overlapping legal issues and, thus, no possibility that future appellate litigation concerning a future award with respect to the conversion claims, if any, would be duplicative or cumulative.

    **C.**    **Because There is No Just Reason for Delay, the Court's Entry of Judgment Was Appropriate and Should Stand.**

In this case, there can be no question that the court properly weighed the equities in exercising its discretion to grant judgment confirming the arbitration award of monetary damages to UBS. The propriety of the arbitration award in this

4

respect is beyond dispute, and the Starks do not even suggest they do not owe a legal debt to UBS, one that they have refused to pay for years.[2]  And, although they claim that UBS someday will be found to owe them an amount in excess of what they owe the firm (Mot. at 3), the record in the arbitration proceeding and the record before the Court provide no factual basis for this assertion.

The Starks have made absolutely no showing of a right to recovery exceeding the judgment to UBS.  Indeed, the Declaration of James H. Stark—the only evidence the Starks have submitted relevant to this issue—speaks predominantly to the *cost* of creating the Goldmine database (as opposed to its value), which is not a proper measure of damages at all.  (Stark Decl. ¶¶ 2-4; DE 20-1.)  If the Starks invested considerable sums into producing a worthless database, UBS should not have to reimburse those costs under any theory of compensation.  Likewise, the claim for alleged past "lost revenue" already was entertained and denied by the arbitration panel.  (*See* DE 1-2 (denying damages "in their entirety with prejudice for lacking merit under the law").)  The panel expressly denied all claims not addressed in its award, including the claim for lost profits (*see id.*), and the only issue that is the subject of remand is whether, in light of the inability of UBS to return some of the Goldmine data to the Starks, the Starks are entitled to a monetary award in an amount equal to the present value of the data (DE 17).

It also is noteworthy that the Starks' moving papers and the Declaration of James H. Stark both continue to mislead with respect to the scope of the Goldmine data at issue—the actual dispute relates to a small portion of the data that

---

[2]  Despite refusing to pay their debts, the Starks only asserted their "offsetting" claims for monetary damages against UBS only after UBS sought to recover the money owed in the arbitration proceeding.  (Resp. to Mot. to Vacate at 5; DE 11.)

5

1  essentially has no value.  The arbitration panel ordered UBS to return data dating
2  from *prior* to the time the Starks joined UBS.  (*See* DE 1-2.)  This customer data is
3  now over ten years old and of dubious value.  Indeed, the Starks previously
4  offered *no evidence* at the arbitration hearing that any of the data that existed prior
5  to the time they joined UBS had any value whatsoever.  On the contrary, James
6  Stark testified at that time that in order to convert prospects to actual revenue, it
7  was important to contact prospects when they were "warm."  (*See* Ex. H to Fortino
8  Aff. (DE 12-1) at 531:2-11.)  Any prospects in the ten-year-old data are, doubtless,
9  cool.

Given the age of the Starks' debt—well over three years—and the lack of any basis for believing that it will be offset by a future award from the arbitration panel, entering judgment in favor of UBS was a just result.

## CONCLUSION

For the foregoing reasons, the Starks' Motion for Relief From Judgment and Order should be denied in its entirety.

DATED this 21st day of December, 2012.

OSBORN MALEDON, P.A.


By  s/ Maureen Beyers
    Maureen Beyers
    2929 North Central Avenue, 21st Floor
    Phoenix, Arizona  85012-2793

    Andrew J. Ceresney
    Philip A. Fortino
    DEBEVOISE & PLIMPTON LLP
    919 Third Avenue
    New York, NY  10022

*Counsel for Defendant UBS Financial Services, Inc.*

1 **CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2012, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.


s/ Lindsay B. Jensen
4560994